IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY MICHAEL CASTELLO, | : | CIVIL NO. 4:24-CV-1032 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| TYLER ARBOGAST, et al., | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

## I.   Factual Background

This *pro se* prisoner lawsuit comes before us for consideration of a motion to dismiss, (Doc. 21), which seeks the dismissal of some, but not all, of the plaintiff's claims. With respect to this motion, the well-pleaded facts in the plaintiff's complaint, which guide our consideration of the motion, recite as follows:

Anthony Castello is a prisoner housed in the Union County Prison. According to state court records, Castello was convicted of resisting arrest, public drunkenness, criminal mischief, and harassment in August of 2024 and received a nine-to-twenty four month sentence. Commonwealth v. Castello, CP-60-CR-0000190-2023. Castello alleges in his complaint that these charges arose out of a May 4, 2023 incident in which he experienced a medical emergency. (Doc. 1). State police

1

responded to this emergency, and according to Castello, he was brutally beaten at the scene. (Id.) Castello alleges that he suffered facial fractures, hematoma, pinched nerves, lacerations, contusions, and a concussion at the hands of the arresting troopers. (Id.)

While the factual narrative in support of Castello's complaint speaks solely in terms of an excessive force claim lodged against the arresting troopers, this complaint sweeps more broadly. In addition to an excessive force claim, which the individual defendants do not challenge in their motion, Castello alleges that the defendants engaged in false arrest, false imprisonment, and malicious prosecution. (Id.) The complaint also sweeps broadly in terms of the named defendants. In addition to naming the three arresting troopers as defendants, the complaint also names the Pennsylvania State Police and State Police Troop F command center as institutional defendants. (Id.)

With Castello's claims framed in this fashion, the defendants have filed a motion to dismiss many of these claims. While the defendants do not challenge the excessive force claim brought against the individual troopers, they have moved to dismiss the institutional defendants, and have further moved for the dismissal of the false arrest, false imprisonment, and malicious prosecution claims against all

defendants. (Doc. 21). This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, the motion to dismiss will be granted.

## II. Discussion

### A. Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

6

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

    **B.**    **The State Police Institutional Defendants and Individual Official Capacity Damages Claims Will Be Dismissed.**

At the outset, in his *pro se* federal civil rights complaint Castello names the Pennsylvania State Police and State Police Troop F command center as institutional

defendants and seeks damages from this agency of state government.

This he may not do. Indeed, Castello's claims against the state police as an institution run afoul of basis and insurmountable legal obstacles:

> First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States....", U.S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).
>
> Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Pennsylvania State Police and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa. Cons. Stat. § 8521(b). This, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court; see 42 Pa. Cons. Stat. § 8522, Section 8521(b), which flatly states that: "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. Con. Stat. § 8521(b).
>
> The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to the state agencies that are integral

> parts of Pennsylvania's criminal justice system like the Pennsylvania State Police. Therefore, the "Eleventh Amendment bars claims for damages against the P[ennsylvania] S[tate] P[olice], a state agency that did not waive its sovereign immunity." Atkin v. Johnson, 432 F. App'x 47, 48 (3d Cir. 2011) (internal citations omitted). Moreover, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against this state agency or state officials in their official capacity since it is also well settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the principal federal civil rights statute. Will, 491 U.S. at 71.

Andresen v. Pennsylvania, No. 1:20-CV-989, 2021 WL 9273956, at *5 (M.D. Pa. July 16, 2021), report and recommendation adopted, No. 1:20-CV-989, 2021 WL 9273955 (M.D. Pa. Nov. 2, 2021).

Simply put, Castello's federal civil rights claims for damages against the State Police are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983. Therefore, since the State Police as an agency of state government cannot be sued in this fashion in federal court, the State Police and State Police Troop F command center as institutional defendants will be dismissed as institutional defendants from this action.

Likewise, Castello may not bring damages claims against individual defendants solely in their official capacities. As to such official capacity claims, it is well established that, "[r]elying on the plain language of § 1983 and Congress's intent in enacting the statute, the Supreme Court has held that a state and state officers acting in their official capacities are not 'persons' against whom a claim for money damages

9

under § 1983 can be asserted." Boone v. Pennsylvania Off. of Vocational Rehab., 373 F.Supp.2d 484, 498 (M.D. Pa. 2005) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 n. 10 (1989)). Of course, Castello may still maintain these damages claims against the individual trooper defendants in their individual capacities. Mack v. Warden Loretto FCI, 839 F.3d 286, 303 (3d Cir. 2016) (section 1983 "has long provided for money damages against state officials sued in their individual capacities"). In this regard, we construe the complaint as making such individual capacity damages claims in addition to any official capacity claims. See Jones v. Garman, No. 1:21-CV-01715, 2022 WL 21756146, at *4 (M.D. Pa. May 10, 2022), report and recommendation adopted, No. 1:21-CV-01715, 2022 WL 21756143 (M.D. Pa. June 2, 2022).

    **B.**    **Castello's Malicious Prosecution, False Arrest, and False Imprisonment Claims Should Be Dismissed.**

Castello also asserts that the individual defendants, Troopers Arbogast, Horan, and Bowers, violated his Constitutional rights by engaging in a malicious prosecution and asserts claims of false arrest and false imprisonment alleging that the officers did not have probable cause to arrest him, despite his subsequent conviction. These federal constitutional claims implicate Castello's rights under the Fourth Amendment to the United States Constitution, which provides:

    The right of the people to be secure in their persons, houses, papers, and

> effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. Under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983. See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978)).

However, as currently pleaded these claims fail as a matter of law. At the outset, any malicious prosecution claims set forth in Castello's complaint fails because they rest upon a fatally flawed legal premise. At bottom, the plaintiff seeks to bring a civil rights action premised on claims of malicious prosecution despite the fact that he was convicted at trial, sentenced, and has not set aside or overturned these convictions.

This he cannot do. Quite the contrary, it is well settled that an essential element of a civil rights malicious prosecution claim is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a malicious prosecution or false arrest claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law. The Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates

11

> a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483 (quoting Carey v. Piphus, 435 U.S. 247, 257-58, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy . . . because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

Thus, "our precedents are clear that § 1983 plaintiffs alleging arrest and prosecution absent probable cause may bring malicious prosecution claims under the Fourth Amendment but are entitled to relief only if they are innocent of the crime for which they were prosecuted." Washington v. Hanshaw, 552 F. App'x 169, 173 (3d Cir. 2014) (citing Hector, 235 F.3d at 156). Therefore, "a plaintiff claiming malicious prosecution must prove *actual* innocence as an element of his *prima facie* case."

12

Steele v. City of Erie, 113 F. App'x 456, 459 (3d Cir. 2004). See Guider v. Evans, No. 1:14-CV-00331, 2014 WL 2472123, at *6-7 (M.D. Pa. June 2, 2014).

In the instant case, it is clear that Castello has not achieved a favorable termination of this state prosecution since he currently remains convicted of these state offenses. Since a favorable termination of the plaintiff's state criminal case is a prerequisite to any civil rights claims based upon allegations of false arrest or malicious prosecution, the immutable fact of Castello's state court conviction defeats these claims and compels dismissal of this complaint. In short, this complaint is based upon the fundamentally flawed legal premise that the plaintiff can sue the state for malicious prosecution even though he has not prevailed in the underlying state case. Since this premise is simply incorrect, this complaint fails as a matter of law. See Fleming v. Yates, No. 1:21-CV-349, 2021 WL 1899870, at *6 (M.D. Pa. Mar. 16, 2021), report and recommendation adopted, No. CV 1:21-349, 2021 WL 1499315 (M.D. Pa. Apr. 16, 2021); Galloway v. Kane, No. 1:15-CV-1007, 2015 WL 3953112, at *5–6 (M.D. Pa. June 29, 2015).

Likewise, in order to make out a false arrest claim, a plaintiff must demonstrate that police lacked probable cause to arrest. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). Thus, proof that probable cause was lacking is essential to any § 1983 claim arising out of the arrest or detention of an individual. For purposes

of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). An arrest by a police officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Although "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), all interpretations of probable cause require "a belief of guilt that is reasonable as opposed to certain." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Hill v. California, 401 U.S. 797, 804 (1971)). Probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support

14

a conviction." Wright, 409 F.3d at 602 (quoting Adams v. Williams, 407 U.S. 143, 149 (1972)). Accordingly, the evidentiary standard for probable cause is significantly lower than that required for conviction. Id. (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause requires only a "fair probability" that a person committed the relevant crime). Because an arrest is made with probable cause if at the moment it was made the facts and circumstances within the officer's knowledge "were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964), the constitutional validity of an arrest does not turn on whether the suspect actually committed any crime. Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003).

Thus, "[t]he determination that probable cause exists is fundamentally a factual analysis that must be performed by officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). Although officers on the scene may draw inferences and make deductions that might elude an untrained person, United States v. Cortez, 449 U.S. 411, 418 (1981), "an officer's inferences and deductions can only justify a warrantless arrest if the government satisfies its

burden of establishing the probable cause necessary to support the arrest." <u>Myers</u>, 308 F.3d at 255.

In this case, Castello's Fourth Amendment allegations of false arrest and false imprisonment are fatally flawed in a fundamental way: the plaintiff has alleged no facts whatsoever which would support a claim that the responding officers plainly lacked probable cause to arrest him, and he was ultimately convicted of the crimes for which he was arrested. Given these immutable facts, these claims also fail and will be dismissed.

An appropriate order follows.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: December 2nd, 2024