IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY MICHAEL CASTELLO, | : | CIVIL NO. 4:24-CV-1032 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| TYLER ARBOGAST, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.    Introduction

We last addressed this *pro se* prisoner lawsuit on consideration of a motion to dismiss, which we granted, dismissing all of the claims and defendants in the plaintiff's complaint except the Fourth Amendment excessive force claim brought against law enforcement defendants Troopers Arbogast, Horan, and Bowers in their individual capacities. (Doc. 34). Apparently emboldened by the survival of his excessive force claims, the plaintiff has now filed a motion for summary judgment in this case, arguing that the Court should rule in his favor as a matter of law. But the plaintiff's motion fails to overcome a number of legal and factual obstacles. At the outset, he faces an exacting burden in proving there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law on his excessive

1

force claims, which are fact-bound in nature and rarely resolved in favor of plaintiffs[1] at the summary judgment phase, particularly where the question involves the reasonableness of the force employed by the officer defendants who, as the non-moving parties, enjoy all doubts resolved in their favor at this stage. Moreover, the plaintiff's motion runs afoul of the procedural requirements that govern motions for summary judgment, frustrating the defendants' efforts to respond to the plaintiff's arguments and the Court's ability to effectively weigh the evidence presented by the parties. Since Castello has failed to present a motion for summary judgment which demonstrates he is entitled to judgment as a matter of law, we will deny his motion for summary judgment.

## II.     Factual and Procedural Background

Anthony Castello is a prisoner housed in the Union County Prison. According to state court records, Castello was convicted of resisting arrest, public drunkenness, criminal mischief, and harassment in August of 2024 and received a nine-to-twenty-four-month sentence. Commonwealth v. Castello, CP-60-CR-0000190-2023. Castello alleged in his complaint that these charges arose out of a May 4, 2023, incident in which he experienced a medical emergency. (Doc. 1). State police

---

[1] We leave for another day the question of whether the undisputed facts may allow for summary judgment in favor of the defendants, an issue which is not yet ripe for resolution.

responded to this emergency, and according to Castello, he was brutally beaten at the scene. (Id.) Castello alleges that he suffered facial fractures, hematoma, pinched nerves, lacerations, contusions, and a concussion at the hands of the arresting troopers. (Id.)

Castello filed this complaint on June 24, 2024, the factual allegations in which spoke solely in terms of an excessive force claim lodged against the arresting troopers, but also alleged that the defendants engaged in false arrest, false imprisonment, and malicious prosecution and named, in addition to the three arresting troopers, the Pennsylvania State Police and State Police Troop F command center as institutional defendants. (Id.) The defendants filed a motion to dismiss the plaintiff's complaint on September 5, 2024. (Doc. 21). This Court granted the defendants' motion and dismissed all of Castello's claims except for the Fourth Amendment excessive force claim against the three arresting troopers, a claim which, at the time, the defendants did not challenge. (Docs. 33, 34). Thus, as of December 2024, the instant case proceeded forward only on the Fourth Amendment excessive force claim brought against Defendants Arbogast, Horan, and Bowers in their individual capacities. (Doc. 34).

The plaintiff now moves for summary judgment in this case, alleging not only that he is entitled to judgment as a matter of law as to the remaining Fourth

Amendment excessive force claim, but also renewing his claims of false arrest, false imprisonment, and malicious prosecution. (Docs. 37, 38). His motion and supporting brief are scant on factual detail and argument and simply recite caselaw while relying upon our interpretation of a list of exhibits he attached to his motion without any statement of material facts explaining their significance. The motion restates the allegations in his complaint, that he was severely beaten by Pennsylvania State Police Troopers while in a medical emergency, spent seventy days in medical care as a result of events and "underlying conditions," that at least one of the three PSP troopers named as defendants acted with Willful Misconduct, and states baldly that he "can prove this by a preponderance of evidence." (Doc. 37, ¶¶ 1-4). But his brief in support of his motion provides no more factual support for his claims, stating only that excessive force was used by Troopers Arbogast and Bowers during his May 4th, 2023, arrest and Troopers Bowers and Horan did not act to stop the events from occurring, despite him suffering numerous injuries and "bleeding profusely." (Doc. 38, at 7). These allegations do not cite to any facts in the record; instead, his motion simply lists the attached exhibits relying on the Court and the defendants to interpret which exhibits support his claims. The balance of his brief in support of his motion recites caselaw governing excessive force, as well as claims of false arrest, false

4

imprisonment, and malicious prosecution, claims which have already been dismissed by this Court.

After a review of the record, and considering these procedural shortfalls, we conclude that Castello's motion for summary judgment falls far short of meeting the rigorous standard required to entitle the plaintiff to summary judgment. Indeed, as explained below, claims of excessive force in general are ill-suited for resolution in favor of plaintiffs on the briefings alone since these claims are fact-bound in nature. Accordingly, we will deny the plaintiff's motion for summary judgment.

### III.     Discussion

#### A. Motion for Summary Judgment – Standard of Review

The plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the

6

material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all
evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey
City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing
to disputed material issues of fact must show by competent evidence that such factual
disputes exist. Further, "only evidence which is admissible at trial may be considered
in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers
Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne
cannot create an issue of fact merely by . . . denying averments . . . without producing
any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x
896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary
judgment is made and supported . . ., an adverse party may not rest upon mere
allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676
F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697
F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue
of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is
also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).
Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338,

341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Further, it is emphatically not the province of the court to weigh evidence or

assess credibility when passing upon a motion for summary judgment. Rather, in

adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable

inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc.

v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-

moving party's evidence contradicts the movant's, then the non-movant's must be

taken as true. Id. Additionally, the court is not to decide whether the evidence

unquestionably favors one side or the other, or to make credibility determinations,

but instead must decide whether a fair-minded jury could return a verdict for the

plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple

BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has

instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match,
> item for item, each piece of evidence proffered by the movant. In
> practical terms, if the opponent has exceeded the "mere scintilla"
> threshold and has offered a genuine issue of material fact, then the court
> cannot credit the movant's version of events against the opponent, even
> if the quantity of the movant's evidence far outweighs that of its
> opponent. It thus remains the province of the fact finder to ascertain the
> believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

Finally, as we have observed in the past, in a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts. See Breeland v. Cook, No. 3:12-CV-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014); Abney v. Younker, No. 1:13-CV-1418, 2019 WL 7812383, at *5 (M.D. Pa. Oct. 3, 2019). In fact, it is clear that, in this setting, we must view the facts in the light depicted by the videotape. See Scott v. Harris, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape").

On this score, any assessment of the probative value of video evidence must take into account that the camera, while an immutable witness, can only describe

9

events from the particular perspective of the video's lens. Thus, the camera only allows us to see what the camera observed and recorded, and our assessment of the evidence must be undertaken through the prism of the camera's perspective, subject to all of the vagaries and limitations of that perspective. This fact has led commentators to caution courts to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions. See Jessica Silbey, Cross–Examining Film, 8 U. Md. L.J. Race, Religion, Gender & Class 17 (2008); Martin A. Schwartz et al., Analysis of Videotape Evidence in Police Misconduct Cases, 25 Touro L.Rev. 857 (2009).

Moreover, where a video has inherent ambiguities, courts have declined invitations to grant summary judgment based upon that video evidence. See e.g., Velez v. Fuentes, No. CV156939MASLHG, 2016 WL 4107689, at *8 (D.N.J. July 29, 2016); Breeland v. Cook, No. 3:12-CV-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014); Abney v. Younker, No. 1:13-CV-1418, 2019 WL 7812383, at *5 (M.D. Pa. Oct. 3, 2019). It is against this legal backdrop that we review the plaintiff's motion in this case.

## B. The Plaintiff's Motion for Summary Judgment Will Be Denied.

The plaintiff moves for summary judgment, seemingly arguing he is entitled to judgment as a matter of law on all the claims in his complaint. The brief in support

10

of his motion lists legal authority and exhibits but makes no clear argument on the plaintiff's behalf and attaches only a list of exhibits but no clear statement of material facts. Moreover, it cites to caselaw governing claims which this Court has already dismissed from this action. At the outset, we remind the plaintiff that the only surviving claim in this case is his Fourth Amendment excessive force claim against the three law enforcement defendants. Thus, any argument that he is entitled to judgment on these previously dismissed claims fails. Moreover, even as to the surviving excessive force claim, which the defendants did not previously move to dismiss, the plaintiff's motion for summary judgment runs afoul of both the procedural and substantive benchmarks which govern his claim. Accordingly, we will deny the plaintiff's motion.

### a.  The Plaintiff Has Not Complied with Rule 56.1.

At the outset, it is clear that the plaintiff has presented his motion for summary judgment in a manner that simply fails to fully comply with Local Rule 56.1 which states:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue

11

to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

L.R. 56.1.

The plaintiff's motion for summary judgment simply restates the allegations in his complaint and states baldly that he "can prove this by a preponderance of evidence." (Doc. 37, ¶¶ 1-4). His brief in support of his motion provides no more factual support for his claims, stating only that excessive force was used by Troopers Arbogast and Bowers during his May 4th, 2023, arrest and Troopers Bowers and Horan did not act to stop the events from occurring, despite him suffering numerous injuries. (Doc. 38, at 7). These allegations do not cite to any facts in the record, instead simply listing the attached exhibits.

While the plaintiff avers that he can prove his claims, he has neglected Local Rule 56.1's admonition that, "statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." L.R. 56.1. In fact, he has wholly failed to provide any statement of facts whatsoever, and even broadly construing his motion and supporting brief, each is simply devoid of any reference to facts in the record beyond his complaint. We acknowledge the Supreme Court's admonition that *pro se* pleadings are to be liberally construed and "however inartfully pleaded, must be held

12

to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v.</u>

<u>Pardus</u>, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Nonetheless, compliance with Local Rule 56.1 is an important procedural corollary

to summary judgment practice and the ability of this Court to regulate summary

judgment practice through enactment of Local Rule 56.1 has long been recognized

by the appellate courts, which have repeatedly sustained district court efforts to

enforce compliance with this rule. <u>See, e.g., Aubrey v. Sanders</u>, 346 Fed.Appx. 847

(3d Cir. 2009); <u>Smith v. Addy</u>, 343 Fed.Appx. 806 (3d Cir. 2009); <u>Conn v. Bull</u>, 307

Fed.Appx. 631 (3d Cir. 2009). Further, as we have noted, "[t]he purpose of this rule

is obvious: it enables the court to identify contested facts expeditiously and prevents

factual disputes from becoming obscured by a lengthy record." <u>Pinegar v. Shinseki</u>,

No. 07-313, 2009 WL 1324125, *1 (M.D. Pa. May 12, 2009). To achieve this goal:

> Pursuant to Local Rule 56. 1, a party moving for summary judgment
> must supply "a separate, short and concise statement of the material
> facts, in numbered paragraphs, as to which the moving party contends
> there is no genuine issue to be tried." L.R. 56.1. Local Rule 56.1
> requires counsel to analyze the record evidence, identify relevant
> inferences of fact reasonably drawn from that evidence, and provide to
> the court a material statement of facts to which there is no genuine
> issue. <u>See</u> <u>Gantt v. Absolute Machine Tools, Inc.</u>, No. L06–CV–1354,
> 2007 WL 2908254, at *3 (M.D. Pa. Oct. 4, 2007). The purpose of this
> rule is to "structure a party's summary judgment legal and factual theory
> into a format that permits and facilitates the court's direct and accurate
> consideration of the motion." <u>See</u> <u>Hartshorn v. Throop Borough</u>, Civ.
> A. No. 3:07–CV–01333, 2009 WL 761270, at *3 (M.D. Pa. Mar. 19,

2009) (quoting Gantt, 2007 WL 2908254, at *3 (internal quotations omitted)).

Savidge v. Donahoe, No. 08-2123, 2011 WL 3568274, *2 (M.D. Pa. Aug. 12, 2011).

Given the important purposes served by Local Rule 56.1 in providing structure and coherence to summary judgment presentations, courts have broad discretion in addressing the failure of parties to fully comply with this rule. As this court has noted:

> When a moving party fails to comply with Local Rule 56.1 "the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own" . . . we may also deny a motion for summary judgment for failure to comply with Local Rule 56.1 . . . [or] deem unopposed facts admitted.

Hickey v. Merritt-Scully, No. 4:18-CV-01793, 2021 WL 949448, at *1 (M.D. Pa. Mar. 12, 2021) (quoting Abu-Jamal v. Kerestes, No. 3:15-CV-967, 2018 WL 2166052, at *14 (M.D. Pa. May 10, 2018)). See also Landmesser v. Hazleton Area Sch. Dist., 982 F. Supp. 2d 408, 412 (M.D. Pa. 2013); Doyle v. Wayne Mem'l Hosp., No. 3:18-1784, 2020 WL 753196, at *2 (M.D. Pa. Feb. 13, 2020); Bowers v. Nat'l Collegiate Athletic Ass'n, 9 F. Supp. 2d 460, 476 (D.N.J. 1998) ("[F]ailure to comply with the Local Civil Rule would by itself suffice to deny [a] motion for summary judgment").

Thus, the material non-compliance with Local Rule 56.1 on the part of the plaintiff, which has frustrated the Court's ability to identify contested facts

14

expeditiously, on its own could compel the denial of the plaintiff's motion for summary judgment.

> b. **Disputed Issues of Fact Preclude Summary Judgment in Favor of the Plaintiff.**

Notwithstanding the procedural shortcomings of Castello's motion for summary judgment, his excessive force claim is simply not subject at this juncture to a summary judgment resolution. Excessive force claims frequently entail a fact-specific inquiry. On this score, the Supreme Court of the United States has held that claims against law enforcement officers that allege the use of excessive force in the context of an arrest, investigatory stop, or other "seizure" are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). Indeed, "[t]he use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006). In assessing such a claim for a Fourth Amendment violation under § 1983, the inquiry is whether the force used by the law enforcement officers was objectively reasonable in light of the totality of the circumstances. Graham, 490 U.S. at 397. As the Supreme Court explained:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Id., at 8, 105 S.Ct., at 1699, quoting United States v.

15

Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)
. . . Because "[t]he test of reasonableness under the Fourth Amendment
is not capable of precise definition or mechanical application," Bell v.
Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447
(1979), however, its proper application requires careful attention to the
facts and circumstances of each particular case[.]

Graham, 490 U.S. at 396. Thus, when considering such claims, the reasonableness of

a particular use of force is often dependent upon factual context and must be "judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight." Id. at 396-97.

Against this standard, it simply cannot be said at this juncture that the plaintiff

has resolved all questions of fact in his favor, particularly when we are enjoined o

view the facts in a light most favorable to the defendants, as the nonmovants. In fact,

the plaintiff presents precisely the type of factual dispute which precludes summary

judgment. It is undisputed that some force was used in effectuating Castello's arrest.

But the defendants argue that the amount of force applied was necessary to restrain

Castello, who they believed was high on PCP or meth and was out of control. The

troopers all testified that Castello was "large, strong, and forcefully resisting their

attempts to restrain him and that substantial force was necessary to final[lly] subdue

him." (Id., ¶ 62).

Specifically, the defendants allege that, on May 4, 2023, Troopers Arbogast

and Bowers received a call that a white male dressed in black was attempting to break

16

into several cars parked at a hotel and restaurant. (Doc. 42, ¶ 3). They arrived at the

scene and found Castello face down on the road, screaming incoherently, foaming at

the mouth, and sweating profusely. (Id., ¶¶ 6-12). Trooper Arbogast testified that he

believed, based on his expertise and training, that Castello was high on PCP or meth.

(Id., ¶ 12). According to the defendants, Castello got up and began walking toward

the officers and several civilians at the scene and both Trooper Arbogast and Bowers

warned him to get down or be tased. (Id., ¶¶ 15-18). Castello then got on the ground

but did not comply with orders to roll over and put his hands behind his head. (Id., ¶¶

27-28). The troopers testified they were concerned about potential hidden weapons

and being struck by the plaintiff while he was on the ground. (Id., ¶ 33). After a

struggle, Trooper Arbogast tased the plaintiff, after which he continues to struggle

and swing at Trooper Arbogast. (Id., ¶¶ 32-36). The troopers then begin striking the

plaintiff, and stated they had to "go hands" in order to prevent more harm and place

in him restraints as fast as possible. (Id., ¶¶ 36-42). Trooper Horan arrived on the

scene during the scuffle and secured Castello's legs while the other troopers wrestled

his arms out from under him until they are able to handcuff him and get him up. (Id.,

¶¶ 43-50). Emergency services arrived and troopers notified them he needed a

sedative because he was out of control. (Id., ¶ 54).[2]

---

[2] Video evidence of the incident, in the form of the mobile video recording (MVR)

Trooper Arbogast admitted to striking Castello in the face three times "to achieve pain compliance." (Id., ₱ 56). Trooper Bowers admitted to kicking Castello in his thigh. (Id., ₱ 57). Trooper Horan testified that a substantial amount of force was required to place the plaintiff in handcuffs but that he did not utilize any "pain compliance" techniques nor observe other troopers doing so. (Id., ₱ 60-61).

As previously discussed, we are without the benefit of a concise and specific statement of facts by Castello, but as for his version of events, his affidavit states that, on the date of the incident he was in a medical emergency and in dire need of medical attention when the troopers arrived. (Doc. 39-3, ₱ 1). Castello states that none of the officers identified themselves in their official capacity[3] but that he nonetheless complied with their orders and never attempted to punch, kick, push, or flee. (Id., ₱ 2). According to Castello, the video evidence demonstrates that most of the blows occurred while both of his arms and legs were under the control and grasp of all three of the troopers. (Id., ₱ 3). He alleges that, as a result of the assault, he suffered acute

---

from Trooper Arbogast and Trooper Bowers' vehicles has been provided by the parties. In our view this video, taken from a distance and mostly obstructed by the civilian onlookers, could support the defendants' version of events that Castello was not entirely compliant with commands although it is difficult to ascertain exactly what force was used by the officers in attempting to force compliance.

[3] In the video of the incident, the troopers are easily identifiable, having arrived in full uniform in their police vehicles.

metabolic encephalopathy, multiple facial fractures, hematoma of his right eye, pinched nerves in both wrists from the handcuffs, lacerations, huge contusions of both whole upper arms, abrasions on the whole upper half of the left side of his face, rhabdomyolysis, osteomyelitis, and a severe concussion leaving him "incapable of any decision-making skills" including knowing his own name for 48 hours. (Id., ⁋ 4).

Clearly these two versions of events presented by the parties as to whether the force applied by the officers was reasonable pose profound, irreconcilable, and unresolved factual questions that would prevent us from determining whether Castello's claims succeed as a matter of law. Moreover, the extent of the injuries alleged by the plaintiff are not entirely borne out by the medical records. In fact, Castello's medical records tend to demonstrate that, although he suffered mild injuries to his head and body from the interaction, he was placed in critical care due to complications from drug overdose, including acute renal failure, dehydration, drug overdose impairing vitals, lactic acidosis, and "life-threatening toxidrome." (Doc. 39-6, at 4). The medical notes state that he "required an excessive amount of sedation to control his agitation." (Id., at 5). The records confirm acute metabolic encephalopathy but note amphetamine intoxication and was the most likely cause. (Id., at 13). It was unclear the cause of the rhabdomyolysis but was noted he was reported being out in the woods and laying for a prolonged period of time but that the injury could also be

19

related to falling during the confrontation with police. (Id.) Further, while the medical records do confirm a mild nose fracture and right eye hematoma, there is no record of a concussion, and a CT scan of his head was negative for acute findings. (Id., at 13). Thus, we are unconvinced that these attached medical records are undisputed evidence of excessive force that command summary judgment in the plaintiff's favor. In fact, these records viewed in the light most favorable to the defendants tend to indicate that his extended hospital stay was the result of his drug addiction and related impairments.

In sum, on these facts as presented by the plaintiff, and viewing the evidence in the light most favorable to the non-moving party, the defendants, Castello's motion for summary judgment is premature, inappropriate, and inadequately supported. Therefore, the motion will be denied. The question of whether these undisputed facts support a defense summary judgment motion, which is not yet ripe, will await another day.

An appropriate order follows.

S/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: April  25, 2025

20