IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY MICHAEL CASTELLO,** | : | **CIVIL NO. 4:24-CV-1032** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **TYLER ARBOGAST, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

**I.    Introduction**

We foreshadowed this memorandum opinion in addressing a motion for summary judgment filed by the *pro se* plaintiff in this case, Anthony Castello. Castello initiated this case in June 2024, alleging, among other claims that have since been dismissed, that the defendants, State Troopers Tyler Arbogast, Jennifer Bowers, and Jacob Horan, used excessive force against him in effectuating his May 4th, 2023, arrest. On April 25th, 2025, we held that the plaintiff's motion arguing he was entitled to summary judgment on his excessive force claims failed to overcome a number of legal, factual, and procedural obstacles, specifically finding that he had not met the exacting burden of proving there was no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law on his excessive force claims, which

1

are fact-bound in nature and rarely resolved in favor of plaintiffs at the summary judgment phase. (Doc. 46).

The defendants have now moved for summary judgment, arguing that the force they used in effectuating Castello's arrest was objectively reasonable as a matter of law and no jury could find in the plaintiff's favor. They rely heavily on the video evidence of the incident, in the form of the mobile video recording (MVR) from Trooper Arbogast and Trooper Bowers' vehicles. As we previously noted in addressing the plaintiff's motion, while this video, taken from a distance and mostly obstructed by the civilian onlookers, could support the defendants' version of events that Castello was not entirely compliant with commands, it is also difficult to ascertain exactly what force was used by the officers in attempting to obtain compliance. Moreover, in our view, the video does not unequivocally prove that the plaintiff acted with the level of aggression that the defendants allege in their motion.

As explained in more detail below, we are cautioned to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions, See Jessica Silbey, Cross–Examining Film, 8 U. Md. L.J. Race, Religion, Gender & Class 17 (2008); Martin A. Schwartz et al., Analysis of Videotape Evidence in Police Misconduct Cases, 25 Touro L.Rev. 857 (2009) and should decline to grant summary judgment based upon video evidence with inherent ambiguities. See e.g., Velez v.

Fuentes, No. CV156939MASLHG, 2016 WL 4107689, at *8 (D.N.J. July 29, 2016); Breeland v. Cook, No. 3:12-CV-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014); Abney v. Younker, No. 1:13-CV-1418, 2019 WL 7812383, at *5 (M.D. Pa. Oct. 3, 2019). Accordingly, since claims of excessive force are inherently fact-bound in nature, and the video evidence is inconclusive as to the precise force used by the defendants, a fact upon which the Court would have to find in the defendants favor as a matter of law, this claim still hinges upon the differing accounts of the opposing parties and is not appropriate for summary judgment. Accordingly, we will deny the defendants' motion.[1]

## II.     Factual and Procedural Background

Anthony Castello is a prisoner housed in the Union County Prison. According to state court records, Castello was convicted of resisting arrest, public drunkenness, criminal mischief, and harassment in August of 2024 and received a nine-to-twenty-four-month sentence. Commonwealth v. Castello, CP-60-CR-0000190-2023. Castello alleged in his complaint that these charges arose out of a May 4, 2023,

---

[1] We note that this matter has been assigned to the undersigned for pretrial management in anticipation of the appointment of a new magistrate judge who will ultimately preside over this matter should it proceed to trial. Given this procedural posture, we deny the defendants' motion for summary judgment without prejudice to the parties seeking reconsideration of the summary judgment matter upon the appointment of a new judge in this case.

incident in which he experienced a medical emergency. (Doc. 1). State police responded to this emergency, and according to Castello, he was brutally beaten at the scene. (Id.) Castello alleges that he suffered facial fractures, hematoma, pinched nerves, lacerations, contusions, and a concussion at the hands of the arresting troopers. (Id.)

Castello filed this complaint on June 24, 2024, the factual allegations in which spoke solely in terms of an excessive force claim lodged against the arresting troopers, but also alleged that the defendants engaged in false arrest, false imprisonment, and malicious prosecution and named, in addition to the three arresting troopers, the Pennsylvania State Police and State Police Troop F command center as institutional defendants. (Id.) The defendants filed a motion to dismiss the plaintiff's complaint on September 5, 2024. (Doc. 21). This Court granted the defendants' motion and dismissed all of Castello's claims except for the Fourth Amendment excessive force claim against the three arresting troopers, a claim which, at the time, the defendants did not challenge. (Docs. 33, 34). Thus, as of December 2024, the instant case proceeded forward only on the Fourth Amendment excessive force claim brought against Defendants Arbogast, Horan, and Bowers in their individual capacities. (Doc. 34).

4

The defendants now move for summary judgment in this case, arguing that the plaintiff's excessive force claims fail as a matter of law because each of the troopers used only the force required to subdue and arrest the plaintiff. On this score, the defendants allege that, on May 4, 2023, Troopers Arbogast and Bowers received a call that a white male dressed in black was attempting to break into several cars parked at a hotel and restaurant. (Doc. 42, ¶ 3). They arrived at the scene and found Castello face down on the road, screaming incoherently, foaming at the mouth, and sweating profusely. (Id., ¶¶ 6-12). Trooper Arbogast testified that he believed, based on his expertise and training, that Castello was high on PCP or meth. (Id., ¶ 12). According to the defendants, Castello got up and began walking toward the officers and several civilians at the scene and both Trooper Arbogast and Bowers warned him to get down or be tased. (Id., ¶¶ 15-18). Castello then got on the ground but did not comply with orders to roll over and put his hands behind his head. (Id., ¶¶ 27-28). The troopers testified they were concerned about potential hidden weapons and being struck by the plaintiff while he was on the ground. (Id., ¶ 33). After a struggle, Trooper Arbogast tased the plaintiff, after which he continues to struggle and swing at Trooper Arbogast. (Id., ¶¶ 32-36). The troopers then begin striking the plaintiff, and stated they had to "go hands" in order to prevent more harm and place in him restraints as fast as possible. (Id., ¶¶ 36-42). Trooper Horan arrived on the scene

5

during the scuffle and secured Castello's legs while the other troopers wrestled his arms out from under him until they are able to handcuff him and get him up. (Id., ¶¶ 43-50). Emergency services arrived and troopers notified them he needed a sedative because he was out of control. (Id., ¶ 54).

Trooper Arbogast admitted to striking Castello in the face three times "to achieve pain compliance." (Id., ¶ 56). Trooper Bowers admitted to kicking Castello in his thigh. (Id., ¶ 57). Trooper Horan testified that a substantial amount of force was required to place the plaintiff in handcuffs but that he did not utilize any "pain compliance" techniques nor observe other troopers doing so. (Id., ¶ 60-61).

To support their version of events, the defendants have submitted the mobile video recording (MVR) from Trooper Arbogast and Trooper Bowers' vehicles. (Doc. 42-2, 42-3). The Arbogast video, (Doc. 42-3, Exhibit C), which has the best view, does show a seemingly disoriented Castello on the ground before getting up and walking toward the Troopers and then again dropping to the ground where officers attempt to get him to put his hands behind his back while telling him to "stop resisting." After he is tased, it is difficult to see precisely what transpires while the plaintiff is on the ground with the troopers on top of him, but there is clearly a struggle until the officers are able to handcuff him. After an ambulance arrives, the plaintiff can still be heard screaming incoherently. In our view this video, taken from a

6

distance and mostly obstructed by the civilian onlookers, could support the defendants' version of events that Castello was not entirely compliant with commands although it is difficult to ascertain exactly what force was used by the officers in attempting to force compliance. And, of course, at this juncture we must construe the video in the light most favorable to Castello, the non-movant.

The *pro se,* incarcerated plaintiff, Castello, has not provided his own rebuttal statement of material facts or much factual evidence or argument in opposition to the defendants' motion. His brief in opposition simply states that he can only send four pages per envelope and that the Court should rely upon the previously submitted exhibits and brief in support of his motion for summary judgment.[2] As previously

---

[2] We acknowledge here, as we did in denying the plaintiff's motion for summary judgment, that the manner in which the plaintiff is conducting his summary judgment practice runs afoul of Rule 56.1 in that he has failed to provide his own statement of material facts or, here, appropriately respond to the defendant's statement of material facts. Nonetheless, we are cognizant of the limitations upon Castello as an incarcerated *pro se* litigant and acknowledge that we have an obligation to construe *pro se* pleadings liberally. See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011). This "policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." Id. (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and citations omitted)). On this score, we note that Castello has also filed an "affidavit," in which he states that his allegations were made under the penalty of perjury. (Doc. 39-3). Thus, liberally construed, we will treat Castello's brief in opposition and the attached exhibits to his own motion for summary judgment as his allegations in opposition to the instant summary judgment motion.

discussed, we were without the benefit of a concise and specific statement of facts by Castello in support of his motion for summary judgment, but as for his version of events, his affidavit states that, on the date of the incident he was in a medical emergency and in dire need of medical attention when the troopers arrived. (Doc. 39-3, ¶ 1). Castello states that none of the officers identified themselves in their official capacity[3] but that he nonetheless complied with their orders and never attempted to punch, kick, push, or flee. (Id., ¶ 2). According to Castello, the video evidence demonstrates that most of the blows occurred while both of his arms and legs were under the control and grasp of all three of the troopers. (Id., ¶ 3). He alleges that, as a result of the assault, he suffered acute metabolic encephalopathy, multiple facial fractures, hematoma of his right eye, pinched nerves in both wrists from the handcuffs, lacerations, huge contusions of both whole upper arms, abrasions on the whole upper half of the left side of his face, rhabdomyolysis, osteomyelitis, and a severe concussion leaving him "incapable of any decision-making skills" including knowing his own name for 48 hours. (Id., ¶ 4).

Castello was ultimately arrested and convicted of resisting arrest, disorderly conduct (engaging in fighting), public drunkenness, criminal mischief (property

---

[3] In the video of the incident, the troopers are easily identifiable, having arrived in full uniform in their police vehicles.

damage), and harassment (subjecting other to physical contact), (Doc. 42, ¶ 1), and is currently incarcerated at SCI-Laurel Highlands. (Doc. 48).

The parties in this case have filed opposing motions for summary judgment, each arguing that no jury could find in the other's favor as to the question of whether the Troopers used excessive force in effectuating Castello's arrest. On April 25, 2025, we denied the plaintiff's motion for summary judgment, concluding that issues of material fact existed as to this question. The defendants' motion for summary judgment has now been fully briefed and is ripe for disposition. (Docs. 42, 45, 48). While, at the time we ruled on the plaintiff's motion, we deferred the question of whether the defendants could meet the exacting burden of showing whether the force they used was objectively reasonable as a matter of law, after a renewed review of the record, we conclude that questions remain as to the type and level of force used by the defendants and whether it was excessive under the circumstances. These questions simply cannot be resolved by the Court at this juncture based upon the equivocal video evidence. Accordingly, we will deny the defendants' motion for summary judgment.

### III. Discussion

#### A. Motion for Summary Judgment – Standard of Review

The defendants have moved for summary judgment pursuant to Rule 56 of the

9

Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."

Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

    Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x

896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Further, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations,

but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

Finally, as we have observed in the past, in a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts. See Breeland v. Cook, No. 3:12-CV-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014); Abney v. Younker, No. 1:13-CV-1418, 2019 WL 7812383, at *5 (M.D. Pa. Oct. 3, 2019). In fact, it is clear that, in this setting, we must view the

facts in the light depicted by the videotape. See Scott v. Harris, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape").

On this score, any assessment of the probative value of video evidence must take into account that the camera, while an immutable witness, can only describe events from the particular perspective of the video's lens. Thus, the camera only allows us to see what the camera observed and recorded, and our assessment of the evidence must be undertaken through the prism of the camera's perspective, subject to all of the vagaries and limitations of that perspective. This fact has led commentators to caution courts to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions. See Jessica Silbey, Cross–Examining Film, 8 U. Md. L.J. Race, Religion, Gender & Class 17 (2008); Martin A. Schwartz et al., Analysis of Videotape Evidence in Police Misconduct Cases, 25 Touro L.Rev. 857 (2009).

Moreover, where a video has inherent ambiguities, courts have declined invitations to grant summary judgment based upon that video evidence. See e.g.,

Velez v. Fuentes, No. CV156939MASLHG, 2016 WL 4107689, at *8 (D.N.J. July 29, 2016); Breeland v. Cook, No. 3:12-CV-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014); Abney v. Younker, No. 1:13-CV-1418, 2019 WL 7812383, at *5 (M.D. Pa. Oct. 3, 2019). It is against this legal backdrop that we review the plaintiff's motion in this case.

### B. The Defendants' Motion for Summary Judgment Will Be Denied.

The defendants have moved for summary judgment, arguing that the force used by Troopers Arbogast, Bowers, and Horan was objectively reasonable and that no jury could find in favor of the plaintiff based upon the evidence presented by the parties. As we noted in denying the plaintiff's motion for summary judgment, excessive force claims frequently entail a fact-specific inquiry. On this score, the Supreme Court of the United States has held that claims against law enforcement officers that allege the use of excessive force in the context of an arrest, investigatory stop, or other "seizure" are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). Indeed, "[t]he use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006). In assessing such a claim for a Fourth Amendment violation under § 1983, the inquiry is whether the force used by the law enforcement officers was objectively reasonable in light of the totality of the

15

circumstances. Graham, 490 U.S. at 397. As the Supreme Court explained:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Id., at 8, 105 S.Ct., at 1699, quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983) . . . Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case[.]

Graham, 490 U.S. at 396. Thus, when considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396-97.

Against this standard, the parties competing accounts of the arrest, neither fully supported by the objective video evidence, present precisely the type of factual dispute which precludes summary judgment. It is undisputed that some force was used in effectuating Castello's arrest. But the defendants argue that the amount of force applied was necessary to restrain Castello, who they believed was high on PCP or meth and was out of control. The troopers all testified that Castello was "large, strong, and forcefully resisting their attempts to restrain him and that substantial force was necessary to final[lly] subdue him." (Id., ¶ 62). Thus, they allege that they were

16

reasonable in their use of force, including striking, kicking, and tasing Castello, based upon their knowledge at the time and their view that Castello presented as violent and dangerous, had been reported attempting to break into cars and was actively resisting arrest and refusing to obey orders.

This case strikes us as a close call. Indeed, the video evidence, while incomplete, does not appear to show the officers using significant force in an attempt to subdue Castello. Moreover, the medical evidence demonstrated that, although he suffered mild injuries to his head and body from the force used by the troopers, he was placed in critical care due to complications from drug overdose, including acute renal failure, dehydration, drug overdose impairing vitals, lactic acidosis, and "life-threatening toxidrome." (Doc. 39-6, at 4). The medical notes state that he "required an excessive amount of sedation to control his agitation." (Id., at 5).

However, in our view, the video also does not show the level of violence and aggression on the part of Castello as characterized by the defendants. Indeed, although the video shows that Castello was seemingly not putting his hands behind his back, he was also clearly not fully in control of his motor functions, was stumbling and rolling around on the ground, and screaming and speaking incoherently, facts that could support the plaintiff's view that he was suffering a medical emergency in the form of a drug overdose at the time of the arrest. Moreover, the plaintiff appears

17

unarmed and, despite claims by the defendants that the presence of the civilian onlookers elevated the level of risk and thus force necessary to subdue the plaintiff, was seemingly not aggressive toward these bystanders.

As we noted in denying the plaintiff's motion for summary judgment, these two versions of events presented by the parties as to whether the force applied by the officers was reasonable pose profound, irreconcilable, and unresolved factual questions that prevent us from determining whether Castello's excessive force claims fail as a matter of law at this juncture. Indeed, although the defendants rely upon the video evidence in supporting their version of events, the video simply does not unquestionably bear out these lingering questions which must be resolved by an impartial fact-finder and not by the Court, particularly when we are required to view the evidence in the light most favorable to Castello. Therefore, the defendants' motion for summary judgment, (Doc. 41), will be denied without prejudice to the parties renewing their motions following the reassignment of this case.

An appropriate order follows.

<em>S/ Martin C. Carlson</em><br>
Martin C. Carlson<br>
United States Magistrate Judge

DATED: May 12 , 2025